Filed 9/6/24  P. v. Hansen CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>MICAH HANSEN,<br><br>     Defendant and Appellant. | G063161<br><br>(Super. Ct. No. 21CF1085)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed as modified.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

A jury found defendant Micah Hansen guilty of one count of attempted murder.  The jury found to be true the allegations that defendant committed the attempted murder willfully, deliberately, and with premeditation and that in the course of committing attempted murder he inflicted great bodily injury on another person who was not an accomplice. The trial court sentenced defendant to a term of seven years to life on the attempted murder conviction with a consecutive three-year term for infliction of great bodily injury.

Defendant filed a notice of appeal.  His appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), setting forth the facts of the case and requesting that we review the entire record. Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), appointed counsel identified three potential issues to assist in our independent review. Defendant was given the opportunity to file written argument on his own behalf, but he has not done so.

We have reviewed counsel's brief and examined the record in accordance with our obligations under *Wende* and *Anders*.  We find no arguable issues on appeal and therefore affirm.

FACTS

On July 29, 2020, Orange County Sheriff's Deputy Herrera was working as a correctional officer assigned to module P at the Theo Lacy facility.  When Herrera conducted an hourly routine safety check at 8:16 p.m., he found an inmate (the victim) lying in a pool of blood.  As Herrera got closer to the victim, he noticed a pool of blood around the victim's head and blood

2

splattered on the nearby walls and cell doors. The victim had a slash across his neck, on top of his head, on his right bicep, and across his eyebrow.

At first, Herrera thought the victim was dead, but then the victim was able to respond to questions by moving his head. Herrera called for paramedics, and the victim was transported to the emergency room at the University of California Irvine Medical Center, where he was treated.

Once the victim was transported away and the area was deemed safe, Herrera commenced an investigation by watching a surveillance videorecording of the area in which the victim was found. The videorecording was received into evidence as exhibit No. 9 and played for the jury while Herrera narrated. The videorecording showed that at 7:37 p.m., defendant was standing in front of cell 3, the victim was standing in front of cell 5, inmate Fakinos was standing in front of cell 7, and inmate Jimenez was in front of cell 11. Jimenez and Fakinos appeared to be talking to each other and standing directly to the left of the victim. Within seconds, Jimenez attacked the victim by making a "slashing motion."[1]

After the "slashing motion," Jimenez left the attack briefly and went to the door to cell 7, in which a toilet was located. As Jimenez approached cell 7, Fakinos and defendant attacked the victim. There was a break in the attack for several seconds, then defendant resumed the attack. Defendant punched the victim approximately 60 times and kicked him 30 times during the attack. Just before 7:42 p.m., the attack ended.

---

[1] Herrera testified that inmates commonly remove blades from disposable razors and use them to slash the throats of other inmates. The inmates dispose of the blades usually by flushing them down a toilet.

3

Immediately after the attack, Fakinos removed his shirt and pants.  Defendant took a shower in the upper-level showers, and Fakinos took a shower in the lower-level showers.  At 8:08 p.m., defendant, Jimenez, and Fakinos were near the television set in the dayroom.  Four minutes later, the inmates were told over the intercom that dayroom time was over and to return to their cells.  Defendant shook hands with Fakinos and Jimenez and returned to his cell.

The victim had a 15-centimeter long laceration to his neck.  The laceration exposed the muscles and came within two to three millimeters of the jugular vein and within a centimeter of the carotid artery.  The attending surgeon described the victim's injuries, which required surgery, as "potentially life threatening."  The laceration to the neck could have been fatal if either the jugular vein or the carotid artery had been severed.  The victim testified he could not recall anything about the assault or whether he had provoked the attackers.

## DISCUSSION

We have reviewed counsel's *Wende/Anders* brief and have examined the record in accordance with our obligations under *Wende* and *Anders*.  Counsel has suggested three issues to assist us in our review: (1) "[w]hether sufficient evidence was presented that [defendant] committed attempted murder"; (2) "[w]hether sufficient evidence was presented that defendant committed deliberate and premeditated attempted murder"; and (3) "[w]hether the court abused its discretion in failing to dismiss the great bodily injury enhancement pursuant to Penal Code section 1385."  None of these issues have merit.

4

However, we find that the amounts of the court operations assessment imposed by Penal Code section 1465.8 and the conviction assessment imposed by Government Code section 70373 were miscalculated. Pursuant to Penal Code section 1465.8, "an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense," and pursuant to Government Code section 70373, subdivision (a)(1), "an assessment [of $30] shall be imposed on every conviction for a criminal offense . . . ." The assessment is imposed on each count of which the defendant stands convicted. (*People v. Castillo* (2010) 182 Cal.App.4th 1410, 1415, fn. 3.)

Defendant was convicted of one count of attempted murder. The court operations assessment should be $40 (1 x $40) and the conviction assessment should be $30 (1 x $30). The abstract of judgment imposes a court operations assessment of $120 and a conviction assessment of $90. Although the trial court stayed all fines, fees, and assessments pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1172-1173, we believe the judgment should reflect the correct amounts. [2]

## DISPOSITION

The abstract of judgment is modified to impose a $40 court operations assessment (Pen. Code, § 1465.8) and a $30 conviction assessment

---

[2] On the day defendant was sentenced in the present case, he entered a guilty plea to a companion prosecution, Orange County Superior Court case No. 23CF1580, in which he was charged with two counts arising out of an incident on April 6, 2022. Defendant was sentenced to a two-year term on count 1 to run concurrently with the sentence in the present case. The abstract of judgment in the companion prosecution reflects a conviction on a single count, and no fines, fees, or assessments—likely because the trial court waived them.

(Gov. Code, § 70373, subd. (a)(1)).  The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                 SANCHEZ, J.

WE CONCUR:


GOETHALS, ACTING P. J.


DELANEY, J.

6